IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
DAYTON, OHIO

| | | |
|---|---|---|
| JAY E. MICHAEL, Admr., | : | |
| | : | |
| Plaintiff, | : | Case No.: 3:10cv-187 |
| | : | |
| vs. | : | Judge Timothy Black |
| | : | |
| VELOX TRUCKING, LLC, et al., | : | Magistrate Judge |
| | : | Sharon L. Ovington |
| Defendants. | : | |

**PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes Plaintiff Jay Michael, as administrator of the Estate of Thomas Callaway, and hereby moves this Court for an Order of Partial Summary Judgment declaring Heidi Callaway a beneficiary for the purposes of Ohio's Wrongful Death Act, R.C. § 2125.01, et seq. This motion is supported by the attached Memorandum of Law.

Respectfully Submitted,

/s/ Timothy M. Mahler
Timothy M. Mahler (0079574)
Michael J. Rourke (0022950)
Rourke & Blumenthal, L.L.P.
495 South High Street, Suite 450
Columbus, Ohio 43215
tmahler@randbllp.com
mrourke@randbllp.com
T: (614) 220-9200
F: (614) 220-7900
*Attorneys for Plaintiff*

# MEMORANDUM IN SUPPORT

**I.   BACKGROUND**

This action arises from a March 21, 2010 motor vehicle crash. Defendant Senad Basic illegally stopped and parked his semi tractor-trailer in the roadway on Interstate 70 at the ramp from US 40 in violation of Ohio Revised Code Section 4511.66. Rather than continuing down the roadway a few hundred feet in order to safely pull over to the side of the road or driving a few miles further east to the next exit, Defendant Basic decided to stop his truck and block the on-ramp because he heard a noise, which the evidence indicates was caused by a small bird that hit the front of his truck. While attempting to merge onto Interstate 70 from US 40, Plaintiff's decedent, Tom Callaway, struck the back of the semi tractor-trailer head-on in a violent collision and died soon after impact.

Tom Callaway was survived by his wife, Heidi Callaway, two children, and his mother and other next of kin. Tom Callaway married Heidi on October 30, 2008, and the couple lived together as husband and wife up until his death on March 21, 2010. Based on a technicality related to the timing of their marriage, Defendants have moved for partial summary judgment to exclude Heidi Callaway as a wrongful death beneficiary in this lawsuit. Plaintiff is opposing this motion, and, simultaneously, requesting that the Court grant summary judgment declaring that Heidi Callaway is in fact a wrongful death beneficiary in this case. Therefore, the question that this Court must decide is whether Heidi Callaway should be considered Tom Callaway's spouse for purposes of this wrongful death action pursuant to *Lawson v. Atwood* (1989), 42 Ohio St.3d 69.

**II.    FACTS**

Tom Callaway was first married to Deborah Callaway in 1993. (D. Callaway p. 18).[1] They had two children together, Justin and Jordan, during the course of this marriage. Tom and Deborah divorced in 2002 but remarried in 2003. (Id. at 24) Tom and Deborah separated again in 2006 when he moved from their home in Newton County, Georgia, to live in Ohio. (Id. p. 27) Deborah initiated divorce proceedings against him on August 13, 2008, in Newton County Superior Court Case No. 2008-3236-1. (See Exhibit A). Tom did not attend or participate when that case came before the court "for final consideration" on October 20, 2008. (D. Callaway p. 29) The divorce was granted and the decree/order was signed by Judge Eugene Benton on October 31, 2008 and filed with the Newton Clerk of Courts on November 17, 2008. (See Exhibit A).

After moving to Ohio in 2006, Tom began a relationship with Heidi Amspaugh. Thinking that Tom's divorce to Deborah Callaway was finalized as of the October 20, 2008 hearing in Newton County Superior Court, Tom and Heidi married in a ceremony which took place on October 30, 2008 in Sevier County, Tennessee. (See Exhibits B & C) As such, Tom and Heidi married one day before the final divorce decree between Tom and Deborah was actually signed by the judge.

There is no dispute that Tom and Heidi Callaway believed they were legally married. They lived together, provided emotional and financial support to one another, raised children together[2], and otherwise operated as a married couple. Indeed, Heidi took

---

[1] The deposition of Deborah Callaway was filed with the Court by the Defendants. Plaintiff has filed the deposition of Heidi Callaway with the Court.

[2] Although they did not have any children together, Tom Callaway provided financial support to Heidi's two children from a former marriage, Alexis and Cameron, in addition to actively participating in their every day lives and school functions. (H. Callaway p.80). Similarly, Tom's son, Justin, lived with Tom and Heidi for an extended period of time. (D. Callaway p. 82).

3

Tom's last name immediately following their wedding day and still goes by it to this day. There is also no dispute that their families, friends, and the general public believed they were married and treated them as a lawfully married couple. Heidi Callaway is listed as Tom Callaway's spouse on his death certificate (see exhibit D) and all governmental agencies viewed them as a lawfully married couple. In other words, everyone operated as though Tom and Heidi Callaway were a lawfully married couple. It was not until after Tom's death that Heidi Callaway and Deborah Callaway learned through talking to one another that Tom and Heidi married one day before the judge had actually signed the divorce degree between Tom and Deborah, thereby putting the legality of the marriage into question. (D. Callaway p. 35; H. Callaway p. 25)

### III. LAW AND ANALYSIS

Defendants are taking the position that Heidi Callaway should be excluded as a wrongful death beneficiary in this case because she married Tom before the final divorce decree between Tom and Deborah Callaway was signed and filed, thereby making the marriage between Tom and Heidi void *ab initio*.

Ohio's wrongful death statute, contained in Revised Code Section 2125.02 states in pertinent part:

> [A] civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent. A parent who abandoned a minor child who is the decedent shall not receive a benefit in a civil action for wrongful death brought under this division.

The Ohio Supreme Court has noted that the Wrongful Death Act is remedial in nature, and as such is to be "construed to promote the objectives of the Act and to assist the

4

parties in obtaining justice." *Lawson v. Atwood* (1989), 42 Ohio St. 3d 69, 70. The objectives of O.R.C. §2125.01 et seq. are "(1) to compensate those who have been deprived of a relationship, (2) to ensure that tortfeasors bear the cost of wrongful acts, and (3) to deter harmful conduct which may result in death." *Id.*; see also *In re Bonfield* (2002), 97 Ohio St.3d 387, 393.

In *Lawson*, the Ohio Supreme Court was faced with a similar issue, i.e. whether or not a non-biological, non-adoptive "parent" can recover for the wrongful death of a child despite not falling under the strict definition of that term. The Court, liberally construing the definition of parent so as to further promote the objectives of the wrongful death statute, found in the affirmative. *Id.* at 72. The Court provided that the individual can recover in these situations if he or she can establish by clear and convincing evidence that:

> (1) The natural parents of the child have disclaimed or abandoned parental rights to the child;
>
> (2) The one claiming to be parent has performed the obligations of parenthood for a substantial period of time;
>
> (3) The child and the one claiming to be parent have held themselves out to be parent and child for a substantial period of time; and
>
> (4) The relationship between the child and the one claiming to be parent has been publicly recognized.

*Lawson, supra* at syl. ¶ 1.

More recently, Judge Eric Brown of the Franklin County Court of Common Pleas issued a similar decision based on the ruling in *Lawson*. In his December 13, 2007 decision in *Richardson v. Grant/Riverside/Doctors OhioHealth Corp., et al.*, Judge Brown held that just like the "parent" in *Lawson*, a non-biological, non-adoptive "child"

5

can recover for the wrongful death of a parent despite not being the natural or adoptive parent of that child. A copy of Judge Brown's decision in *Richardson* is attached hereto as exhibit E.

Like the other designated parties listed under Revised Code Section 2125.02, the term "spouse" is not expressly defined within the Act. *See Bonfield*, 97 Ohio St. 3d. at 393. Given that the Ohio Supreme Court has explicitly stated that Ohio's wrongful death statute should be liberally construed, Heidi Callaway should be considered a spouse so as to be entitled to recover for the death of Tom Callaway even though their marriage may be technically deficient.

Here, the evidence is undisputed that Heidi believed that Tom was her husband from the date of their marriage until his death. She loved and treated him as such until his death. She received Tom's love, society, counseling, support and companionship until he was tragically killed. In regard to the specific test set forth in *Lawson* by the Ohio Supreme Court, there is no dispute that Deborah Callaway "disclaimed or abandoned" her marital rights as to her ex-husband as they had separated more than three years prior to his death and she was granted a divorce by the Superior Court of Newton County (Georgia) in 2008. She testified that "everything ended" between them after Tom moved to Ohio in January of 2006. (D. Callaway p. 92).

As for the second prong of the test, there is clear and convincing evidence that prior to the accident on March 21, 2010, Heidi Callaway "had performed the obligations of [marriage] for a substantial period of time." Tom and Heidi were married in a ceremony which took place on October 30, 2008, she took his last name, they lived together, and everyone believed that they were a married couple. Heidi described her

6

relationship with Tom as follows: "Amazing. He was my best friend. We did everything together." (H. Callaway p. 66). Heidi testified in her deposition that she and Tom had discussed plans to expand their family in addition to starting new career paths together. (Id. at p. 67). Tom provided most of the financial support on which the family, including Heidi and her children, relied. (Id. at p. 80).

In regard to the third and fourth prongs of the test, Tom and Heidi held themselves out to the public as a married couple for a "substantial period of time" – approximately a year and a half prior to Mr. Callaway's death in March of 2010 – and their marriage was "publicly recognized" by everyone, including the county that issued their marriage certificate and the Ohio Department of Health who listed Heidi as Tom's wife on his death certificate.

As previously noted, one of the stated objectives of Ohio's Wrongful Death Act is to provide compensation to those who have been deprived of a relationship with a loved one. There is no question that Heidi has lost Tom's love, support, counseling and guidance as a result of his wrongful death. This is precisely the type of loss that is intended to be compensated under Ohio's Wrongful Death Act.

Defendants have requested that the Court grant them attorneys' fees for the preparation of their motion claiming that "[a]s of the date of the filing of this Motion, the undersigned has not been provided with any legal authority supporting Heidi Callaway's claim, or a good faith extension of existing case law for maintaining these claims. Thus, an award of attorneys' fees is warranted." (Defendants' MPSJ p. 7). This statement is factually incorrect and misleading as Plaintiff notified defense counsel of his position on this issue in an October 1, 2010 letter, which was responded to by defense counsel in an

October 5, 2010 letter. More importantly, this is not a legal issue that is cut and dry as the Defendants are trying to make it out to be. As such, there is no basis in fact or in law to award attorney fees regardless of how this issue is decided.

## IV. CONCLUSION

This Court should find that the four-pronged test set forth by the Ohio Supreme Court in *Lawson* is applicable to the factual circumstances of this case, and that it has been met by clear and convincing evidence. To deprive Mrs. Callaway of her marital rights after her husband's death based on a technicality would amount to a gross injustice in direct contradiction to the underlying objectives of Ohio's Wrongful Death Act. Plaintiff respectfully requests that this honorable Court DENY Defendants' Motion for Partial Summary Judgment, and GRANT the Plaintiff partial summary judgment on this issue by holding that Heidi Callaway is a beneficiary under O.R.C. § 2125.01 et seq. as the spouse of Plaintiff's decedent.

Respectfully submitted,

/s/ Timothy M. Mahler
Timothy M. Mahler (0079574)
Michael J. Rourke (0022950)
Rourke & Blumenthal, L.L.P.
495 South High Street, Suite 450
Columbus, Ohio 43215
tmahler@randbllp.com
mrourke@randbllp.com
T: (614) 220-9200
F: (614) 220-7900
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 2, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      /s/ Timothy M. Mahler
      Timothy M. Mahler