IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY OHIO
CIVIL DIVISION

James Richardson, Jr., : Case No. 06 CVA-03-3512
Administrator, :
 :
      Plaintiff, : Judge Brown
 :
vs. :
 :
Grant/Riverside/Doctors :
OhioHealth Corp., et al., :
 :
      Defendants. :

**DECISION GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT,
FILED SEPTEMBER 27, 2007**

### I. Introduction

This matter came before the court on plaintiff's Motion for Partial Summary Judgment filed on September 27, 2007. On October 15, 2007, defendants Barbara Toth and Avello Medical Staffing Resources filed their Memorandum Contra Plaintiff's Motion for Partial Summary Judgment. Defendant OhioHealth Corp. ("OhioHealth") also filed a separate Memorandum Contra on October 15, 2007. Plaintiff replied in support of the motion on October 22 and 29, 2007.

### II. Factual and Procedural Background

This case is a medical negligence action arising from the death of James Richardson, Sr. The plaintiff, James Richardson, Jr., individually and as administrator of his father's estate, filed this action on March 16, 2006, seeking damages as a result of defendants' alleged negligence in treating and



Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 2 of 11 PAGEID #: 264
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☒003/012
12/13/2007 10:15 FAX 614 462 4641 FCCCP ☒003/012

Case No. 06 CVA-03-3512

diagnosing James Richardson, Sr. Plaintiff's action survives the death of James Richardson, Sr. and is governed by Ohio's Wrongful Death Act, R.C. 2125.01, *et seq.*

Plaintiff now moves the court for partial summary judgment on one limited issue. Specifically, plaintiff seeks a determination that Jon Edda Brown, a non-biological, non-adoptive putative child of James Richardson, Sr., is a "child" for the purposes of the Wrongful Death Act.

### III. Standard of Review

Civ. R. 56(C) governs a motion for summary judgment. The Ohio Supreme Court has explained the Rule's requirements:

> Civ. R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made.[1]

The party seeking summary judgment bears the burden of proof in showing that no material issues of fact remain to be litigated.[2] All doubts must be resolved in favor of the nonmoving party.[3] However, the nonmoving party is required "to produce evidence on any issue for which that party bears the

---

[1] *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327.
[2] *Celotex Corp. v. Catrett* (1987), 477 U.S. 317.
[3] *Murphy v. Reynoldsburg* (1992), 65 Ohio St. 2d 356.

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 3 of 11 PAGEID #: 265
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☒004/012
12/13/2007 10:15 FAX 614 462 4641 FCCCP ☒004/012

Case No. 06 CVA-03-3512

burden of production at trial."[4] Civ. R. 56(E) codifies this concept and provides in pertinent part that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response...must set forth specific facts showing there is a genuine issue for trial.

Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party.[5]

### IV. Arguments and Analysis

Ohio's wrongful death statute, R.C. 2125.02 provides:

> [A] civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent. A parent who abandoned a minor child who is the decedent shall not receive a benefit in a civil action for wrongful death brought under this division.

Because R.C. 2125.02 is a remedial statute, it is to be construed to promote the objectives of Ohio's Wrongful Death Act and to assist the parties in obtaining justice.[6] The objectives of the Wrongful Death Act are: (1) to compensate those who have been deprived of a relationship, (2) to ensure that tortfeasors bear the cost of wrongful acts; and (3) to deter harmful conduct that may result in death.

---

[4] *Wing v. Anchor Media* (1991), 59 Ohio St. 108, 111.
[5] *Bishop v. Waterbeds 'N' Stuff,* (Franklin App.) 2002-Ohio-2422 at ¶8, citing *Welco Industries, Inc. v. Applied Cos.* (1993) 67 Ohio St. 3d 344, 346.
[6] *Lawson v. Atwood* (1989), 42 Ohio St. 3d 69, 70.

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 4 of 11  PAGEID #: 266
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☒005/012
12/13/2007 10:15 FAX 614 462 4641  FCCCP ☒005/012

Case No. 06 CVA-03-3512

Plaintiff argues that Jon Edda Brown is a "child" of James Richardson, Sr. for the purposes of R.C. 2125.02. Unlike other sections of the Revised Code, R.C. 2125.02 does not define "parent," "child," or "children." Plaintiff asserts that for the purposes of R.C. 2125.02, both "parent" and "child" should be liberally construed to allow a non-biological, non-adoptive putative child of a decedent to recover wrongful death damages. In support of this argument, plaintiff cites *Lawson v. Atwood*,[7] in which a non-biological, non-adoptive father was found to be a "parent" for the purposes of R.C. 2125.02. The Ohio Supreme Court found that a non-biological, non-adoptive parent may recover under R.C. 2125.02 where the parent can establish by clear and convincing evidence that:

  (1) The "natural" or biological parent of the child has disclaimed or abandoned parental rights to the child;
  (2) The one claiming to be the parent has performed the obligations of parenthood for a substantial period of time;
  (3) The child and the one claiming to be a parent have held themselves out to be a parent and child for a substantial period of time; and
  (4) The relationship between the child and the one claiming to be the parent has been publicly recognized.[8]

Although *Lawson* addressed non-biological, non-adoptive "parents," plaintiff argues that *Lawson's* reasoning is equally applicable to non-biological, non-adoptive children. Therefore, plaintiff argues that such children should be permitted to establish that they are "children" for R.C. 2125.02 purposes by demonstrating the four *Lawson* factors by clear and convincing evidence.

---

[7] (1989), 42 Ohio St. 3d 69.
[8] *Id.* at 72.

Case No. 06 CVA-03-3512

Plaintiff also presents evidence to establish that the relationship between Ms. Brown and Mr. Richardson, Sr. satisfies the four *Lawson* factors.

Plaintiff argues that failure to permit a putative child to recover under R.C. 2125.02 where that child can establish all of the requisite *Lawson* factors by clear and convincing evidence would lead to the absurd, asymmetrical result of allowing recovery for a parent and not a child where the parties are not related by blood or formal adoption. Furthermore, plaintiff asserts that the application of *Lawson* to non-biological, non-adoptive children is consistent with the objectives of the Wrongful Death Act. According to plaintiff, Ms. Brown had a close, parent-child relationship with James Richardson, Sr. and was deprived of this parental relationship as a result of defendants' alleged negligence. Because one of the objectives of the Wrongful Death Act is to compensate those who have been deprived of a relationship, plaintiff argues that the definition of a "child" under R.C. 2125.02 should be liberally construed to include Ms. Brown.

In response, the defendants do not dispute the factual allegations set forth by plaintiff. However, the defendants raise several legal arguments to establish that Ms. Brown is not a "child" of James Richardson, Sr. for the purposes of R.C. 2125.02. First, the defendants contend that, in a case decided after *Lawson*, the Ohio Supreme Court held that the definition of "children" under R.C. 2125.02 includes only natural or adopted children.[9] Second, the defendants assert that *Lawson* sets forth a narrow exception to the

---

[9] *Brookbank v. Gray* (1996), 74 Ohio St. 3d 279.

Page 5 of 11

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 6 of 11 PAGEID #: 268
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☐007/012
12/13/2007 10:15 FAX 614 462 4641 FCCCP ☐007/012

Case No. 06 CVA-03-3512

traditional definition of "parent" that should not been expanded to broadened the definition of "children" for the purposes of the Wrongful Death Act.

Finally, the defendants argue that even if the *Lawson* test can be applied to "children" under R.C. 2125.02, plaintiff cannot establish the first *Lawson* factor, that the "natural" or biological parent of Ms. Brown has disclaimed or abandoned parental rights to her. Specifically, the defendants contend that in order to satisfy the first *Lawson* factor, both of a putative child's natural or biological parents have to have disclaimed or abandoned parental rights to the child. In this case, the defendants argue that the undisputed evidence demonstrates that Ms. Brown's natural mother has not disclaimed or abandoned her parental rights, and therefore, both of Ms. Brown's natural or biological parents have not disclaimed or abandoned their parental rights.

Upon careful review, the court finds the defendants' legal arguments unpersuasive. The defendants misstate the holding of the Ohio Supreme Court in *Brookbank v. Gray*.[10] *Brookbank* did not limit the definition of "children" under R.C. 2125.02 to only natural or adopted children, but merely held that the definition of "children" included all natural or adopted children, whether legitimate, legitimated, acknowledged, or illegitimate.[11] Prior to *Brookbank*, Ohio courts had held that unrecognized illegitimate children were not "children" for the purposes of the Wrongful Death Act. *Brookbank* clarified that such children were included within the definition of "children" for R.C. 2125.02, but did not define the outer limits of who could be a "child" for the

---

[10] (1996), 74 Ohio St. 3d 279.
[11] *Id.* at 286.

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 7 of 11 PAGEID #: 269
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☒008/012
12/13/2007 10:15 FAX 614 462 4641 FCCCP ☒008/012

Case No. 06 CVA-03-3512

purposes of the statute. Accordingly, this court cannot find that *Brookbank* requires it to find that Ms. Brown is not a child of James Richardson, Sr. for the purposes of the Wrongful Death Act.

The defendants' argument that the first *Lawson* factor requires that both of a child's natural or biological parents must have disclaimed or abandoned their parental rights in order for the individual to be the "child" of a non-biological, non-adoptive "parent" is similarly based on a misinterpretation of Ohio law. In support of this argument, the defendants rely on *Miller v. Boden*,[12] in which the Third District Court of Appeals refused to permit a stepmother to be included as a "parent" for the purposes of R.C. 2125.02 because the biological mother had been actively involved in the parenting of the deceased child at the time of his death. While the defendants contend that *Miller* establishes that both the natural or biological parents must have abandoned parental rights, *Miller* held only that a stepparent cannot constitute a "parent" under R.C. 2125.02 where both the biological mother and father are actively exercising their parental rights.[13] *Miller*, in effect, limited the definition of "parents" to encompass no more than two individuals for the purpose of R.C. 2125.02.

In this case, the undisputed evidence establishes that Ms. Brown's biological father has had no parental relationship with Ms. Brown throughout her life, and that her stepfather, James Richardson, Sr., acted as her father since she was two years old. Unlike the family situation in *Miller*, this case

---

[12] (3rd Dist. 1995), 103 Ohio App. 3d 73.
[13] *Id.* at 76.

Page 7 of 11

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 8 of 11 PAGEID #: 270
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☒009/012
12/13/2007 10:15 FAX 614 462 4641 FCCCP ☒009/012

Case No. 06 CVA-03-3512

does not involve two biological parents and a stepparent. Ms. Brown's mother's active participation in her life therefore does not preclude the application of *Lawson* to Ms. Brown's relationship with her stepfather, James Richardson, Sr.

This court recognizes that *Lawson* set a narrow standard with a high burden of proof for a non-biological, non-adoptive putative parent to recover under the Ohio Wrongful Death Act and that the Ohio Supreme Court did not intend to broaden unnecessarily the number of individuals who may recover under the Act. The court further recognizes that *Lawson* did not define "child" or "children" and did not hold explicitly that the factors used to determine whether a parent-child relationship existed for the purposes of identifying who is a parent could be applied to determine who is a child. However, this court finds that the Ohio Supreme Court could not have intended the asymmetrical, inequitable result advocated by the defendants.

Under the interpretation of *Lawson* advocated by the defendants, where there is a parent-child relationship between a non-biological, non-adoptive parent and child that satisfies the *Lawson* factors and the child wrongfully dies, the putative parent may recover under R.C. 2125.02. However, where the same parent-child relationship exists and the parent wrongfully dies, the putative child would be precluded from recovery under R.C. 2125.02. The inequities in the argument advocated by the defendants are particularly pronounced where a non-biological, non-adoptive parent-child relationship exists and the surviving putative child is a minor. Of the two parties to a parent-child relationship, the minor child is least able to ensure that a putative

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 9 of 11 PAGEID #: 271
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☒010/012
12/13/2007 10:16 FAX 614 462 4641 FCCCP ☒010/012

Case No. 06 CVA-03-3512

parent-child relationship is formalized in a legally recognized way so that the child's rights under the Wrongful Death Act are protected. Yet, according to the defendants, the Supreme Court intended *Lawson* to only apply to the benefit of a putative parent, presumably the party in the best position to legally formalize the parent-child relationship and protect their rights under the Wrongful Death Act. Such a result is not only inequitable, but also is contrary to the objectives of the Act. Accordingly, the court finds that the defendants have presented no reasonable argument to establish that the Supreme Court intended to limit the use of the *Lawson* in a way that would benefit only the putative parent, but not the putative child in the same relationship.

*Lawson* recognized that, for the purposes of the Wrongful Death Act, a parent-child relationship may exist in the absence of a biological relationship or formal adoption. The *Lawson* court further found that the death of a child may deprive a non-biological, non-adoptive parent of the benefit of the parent-child relationship and that the objectives of the Wrongful Death Act would be served by allowing that parent to seek compensation for the loss of that relationship. Accordingly, *Lawson* established a test for determining when such a parent-child relationship exists. In order to promote the objectives of the Wrongful Death Act, this court finds that the *Lawson* factors may be used to establish that a putative child is a "child" for the purposes of R.C. 2125.02.

The court finds that the factual allegations set forth by plaintiff regarding Ms. Brown's relationship with James Richardson, Sr. are undisputed. Aside from their unpersuasive argument that Ms. Brown's relationship with her

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 10 of 11 PAGEID #: 272
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☒011/012
12/13/2007 10:16 FAX 614 462 4641 FCCCP ☒011/012

Case No. 06 CVA-03-3512

mother precludes James Richardson, Sr. from being a "parent" under R.C. 2125.02, the defendants have presented no evidence or argument to suggest that the undisputed facts presented by plaintiff fail to establish the four *Lawson* factors by clear and convincing evidence. Based on the undisputed evidence, this court therefore finds the following: (1) Ms. Brown's biological father has disclaimed and abandoned his parental rights; (2) James Richardson, Sr. performed the obligations of a father to Ms. Brown for a substantial period of time, (3) Ms. Brown and James Richardson, Sr. held themselves out to be a parent and child for a substantial period of time; and (4) the relationship between Ms. Brown and James Richardson, Sr. has been publicly recognized. Accordingly, the court concludes that plaintiff has established by clear and convincing evidence that Ms. Brown is the "child" of James Richardson, Sr. for the purposes of R.C. 2125.02 based on the four factors set forth in *Lawson*. Plaintiff is entitled to partial summary judgment that Ms. Brown may recover as a beneficiary under the Wrongful Death Act in the same manner as James Richardson, Sr.'s other children.

V. **Conclusion**

For these reasons, plaintiff's Motion for Partial Summary Judgment is GRANTED. Counsel for plaintiff shall submit an appropriate entry in accordance with Loc. R. 25.01.

Judge Eric Brown

Date 12/__/2007

Case: 3:10-cv-00187-TSB Doc #: 22-5 Filed: 11/02/10 Page: 11 of 11 PAGEID #: 273
12/13/2007 10:19 IFAX fax@rblan.lan → rbserver-fax ☑012/012
12/13/2007 10:16 FAX 614 462 4641 FCCCP ☑012/012

Case No. 06 CVA-03-3512

Copies to:

Michael Rourke, counsel for plaintiff

John Burtch and Terri Meldrum, counsel for defendant OhioHealth Corp.

Peter Van Ligten, counsel for defendant Daniel Haile, M.D. and OhioHealth Practice Management

Charles Janes, counsel for defendants Barbara Toth and Avello Medical Staffing Resources